IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEONARD DWON BUSH,　　　　　　　)
　　　　　　Petitioner,　　　　　　)　　Civil Action No. 14-221 Erie
　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　Magistrate Judge Susan Paradise Baxter
NANCY GIROUX, et al.,　　　　　　)
　　　　　　Respondents.　　　　　)


**OPINION**[1]

Presently before the Court is a petition for a writ of habeas corpus filed by state prisoner

Leonard Dwon Bush (the "Petitioner"). (ECF No. 1). For the reasons set forth below, the petition is

denied and a certificate of appealability is denied on all claims.


**I.**


**A.**　　**Relevant Background**

On October 7, 2010, the Petitioner was arrested for numerous crimes, including robbery, rape

and indecent assault. His three-day trial was held in March 2011. The victim, Danielle Van Tassell,

testified that she got off work around 3:00 a.m. the morning of October 5, 2010. When she arrived

outside her apartment, she saw the Petitioner standing near the door to her entrance. She recognized him

because she had met him briefly a few days beforehand. Van Tassell testified that the Petitioner asked

her to call him a taxi. As she called, she walked into her apartment and the Petitioner followed her

---

[1]　　In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a
U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

inside. Van Tassell stated that she was not initially concerned that the Petitioner was in her home. At one point they came to be in her bedroom. According to Van Tassell, the Petitioner took out a knife, threatened her with it, and forced her to engage in sexual conduct. Before he left, he stole from her $190.00.

The Petitioner testified in his defense at his trial and said that the sexual conduct was consensual. He also denied taking the money from Van Tassell. The jury found him guilty of robbery, theft by unlawful taking, indecent assault, and terroristic threats. It found him not guilty of rape, aggravated indecent assault, involuntary deviate sexual intercourse, and receiving stolen property. The trial court sentenced him to an aggregate term of 106 to 212 months of imprisonment.

In his petition for a writ of habeas corpus (ECF No. 1) and brief in support (ECF No. 2), the Petitioner raises three claims. He filed his petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under § 2254, which is the federal habeas statute applicable to state prisoners, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The Respondents filed an answer (ECF No. 11) and the relevant state court records (ECF Nos. 12, 13 and 15). The Petitioner did not file a reply. LCvR2254(E)(2) ("the petitioner may file a Reply … within 30 days of the date the respondent files its Answer.").

**B.** **Legal Analysis**

**(1)** **Claim 1**

In his first claim, the Petitioner contends that the trial court's decision not to permit defense counsel to cross examine Van Tassell regarding pending charges filed against her for a theft-related crime violated his rights under the Confrontation Clause.

**(a)** **Background**

At the time of the Petitioner's trial, Van Tassell was a participant in Pennsylvania's Accelerated Rehabilitative Disposition ("ARD") program.[2] The pending charges against her were for alleged crimes committed approximately one year before the events at issue in the Petitioner's case occurred. Specifically, on September 30, 2009, Van Tassell was charged with theft by deception and receiving stolen property. The Commonwealth alleged that on September 28, 2009, she and her co-defendants carried out an illegal scheme by which $48,000 was stolen from a customer of a massage parlor where they worked. Of that amount, it was alleged that Van Tassell received $2,000. (ECF No. 11-1 at 40, Brief for Appellee in Commonwealth v. Bush, No. 1127 WDA 2011, at 1-2 (Pa.Super.Ct. Feb. 22,

---

[2]      ARD "is a pretrial disposition of certain cases, the procedures for which are set forth in the Pennsylvania Rules of Criminal Procedure…. Under ARD, the attorney for the Commonwealth agrees to suspend prosecution for an agreed-upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the content of which is to be determined by the court and applicable statutes." 26 Standard Pennsylvania Practice 2d § 132:418, WestlawNext (database updated Sept. 2016) (footnotes omitted). "The rules concerning [ARD] contemplate that ordinarily, the defendants eligible for the ARD program are first offenders who lend themselves to treatment and rehabilitation rather than punishment and that the crime charged is relatively minor and does not involve a serious breach of the public trust." Id. If the defendant successfully completes the program, the charges are dismissed upon an order of court. Pa.R.Crim.P. 319. If the defendant fails to complete the ARD program, she may be prosecuted as initially charged. Pa.R.Crim.P. 301, 312.

2012); <u>Commonwealth v. Van Tassell</u>, Magisterial District Judge Docket 06-1-03-CR-0000308-2009[3]; Day 1 Trial Tr. at 76).

Pennsylvania Rule of Evidence 609 permits the introduction of a theft *conviction* to be used to impeach the credibility of a witness. In <u>Commonwealth v. Krall</u>, 434 A.2d 99 (Pa.Super.Ct. 1981), the Superior Court held that because participation in an ARD is not a "conviction," it is not admissible for impeachment purposes and, therefore, the trial court erred in permitting a witness to be cross-examined about being charged with retail theft and her subsequent admission into the program. The Superior Court reasoned:

> The thrust of the A.R.D. Program is to enable a defendant, before he has been convicted of a crime, to enter into a program which hopefully will result in his rehabilitation without the necessity of trial and conviction. If the program does not succeed the Commonwealth may then proceed on the charges. In effect, admission into the A.R.D. Program places the criminal proceedings in abeyance, subject to being reactivated under certain conditions.

<u>Id.</u> at 100-01.

At a sidebar during Van Tassell's cross-examination, defense counsel explained that he wanted to ask her about the charges filed against her. (Day 1 Trial Tr. at 76). The prosecutor objected based upon <u>Krall</u>. (<u>Id.</u>) The court asked defense counsel if he "want[ed] to ask her that question to see if she's trying to curry favor somehow with the authorities, a <u>Davis [v. Alaska</u>, 415 U.S. 308 (1974)] situation?" (<u>Id.</u>) Defense counsel responded that he wanted to introduce the information "[p]artly to show that she's not a

---

3    The docket sheets for the Pennsylvania Judiciary, of which this Court takes judicial notice, are available online at https://ujsportal.pacourts.us.

credible witness, partly to show that at this time she was desperate enough for money to try and extort

$2,000."[4] (Id.) The trial court held:

> Okay, clearly two separate issues. The fact that she's on ARD is not admissible. The fact that she may have been involved in another incident, I'm not going to allow that in. It's too tenuous and I don't see the relevance.
>
> She did testify, based on Counsel's question, that she didn't need any money[.]… I think it's irrelevant whether or not she would have been involved in some other activity unless you can show that it involved this defendant or some nexus between that activity and this defendant or these particular events. So I'm not going to allow it at this time.
>
> Plus I should also say I don't anticipate – I have no idea what the defense is in this case, so, you know, at this point I'm not going to allow it in.

(Id. at 77-78).[5]

On the second day of the trial, the Petitioner presented the testimony of his cousin, Daniel Blue, who testified that he saw Van Tassell after the Petitioner was arrested and she told him "if [the Petitioner] paid $5,000, she would drop the charges." (Day 2, Trial Tr. at 73). Although this defense had now been revealed, the Petitioner did not request permission to recall Van Tassell so that he could introduce evidence of the pending charges against her.

On direct appeal to the Superior Court, the Petitioner argued that it should reconsider its holding in Krall and "enunciat[e] a rule that satisfies" the Confrontation Clause. (ECF No. 11-1 at 47, Brief for Appellant in Commonwealth v. Bush, No. 1187 WDA 2010, at 13 (Pa.Super.Ct. Dec. 23, 2011)). In

---

[4]    Defense counsel stated incorrectly that Van Tassell was alleged to have committed the theft offense "four days or five days before" the events in question in the Petitioner's case. (Day 1 Trial Tr. at 77). As set forth above, Van Tassell's pending charges were for alleged conduct that occurred more than a year before the Petitioner committed his crimes against her.

[5]    The trial court noted in its subsequent 1925(a) Opinion that although it mentioned Davis, "[a]s shown in [the Petitioner's] proffer, he was not arguing that the victim was biased or attempting to garner favorable treatment from the Commonwealth. See, Davis v. Alaska, 415 U.S. 308 (1974)." (ECF No. 11-1 at 69, Commonwealth v. Bush, No. 2820 of 2010, slip op. at 5 n.3 (C.P. Erie Sept. 9, 2011)).

support, he cited <u>Davis v. Alaska</u>, 415 U.S. 308 (1974) for the general proposition that "cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested[,]" and that **"[t]he introduction of evidence of a *prior crime* is thus a general attack on the credibility of the witness**." (<u>Id.</u> at 13 (quoting <u>Davis</u>, 415 U.S. at 316 (emphasis in Brief for Appellant)).

The Superior Court denied the Petitioner's claim. (ECF No. 13 at 69, <u>Commonwealth v. Bush</u>, No. 1127 WDA 2011, slip op. at 6-8 (Pa.Super.Ct. June 7, 2012) ("<u>Bush I</u>")). It determined that there was no basis to reconsider <u>Krall</u> and held that, in accordance with that decision, Van Tassell's ARD participation was inadmissible for impeachment purposes. The Superior Court also rejected the Petitioner's assertion that <u>Davis</u> required a different result. It also noted that:

> While the holding in <u>Davis</u> explains the essential and valuable principles of cross-examination, and the necessary protections to a defendant's right to confrontation, Supreme Court precedent also establishes that the right to confrontation is not limitless. Rather:
>
>> trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985) (per curiam).
>
> <u>Commonwealth v. Bozyk</u>, 987 A.2d 753, 756-757 (Pa.Super. 2009), quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-79 (1986) (emphases in original parallel citations omitted).

(<u>Id.</u> at 7-8).

Following the Superior Court's decision, the Petitioner filed a Petition for Allowance of Appeal

with the Supreme Court of Pennsylvania. (ECF No. 11-1 at 3 -10). That petition was denied on

November 1, 2012. (ECF No. 11-1 at 1).

**(b)      Standard of Review**

Because the Superior Court denied Claim 1 on the merits, this Court's review of it is governed by

AEDPA's standard of review, which is codified at 28 U.S.C. § 2254(d). AEDPA reflects the view that

habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a

substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102 (2011)

(quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). It

provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States, or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the
> > facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[6]

"The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule

that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts

that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different

---

[6]      For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the
state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground.
See, e.g., Harrington, 562 U.S. at 99-100; Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014).

result.'" Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (quoting Brown v. Payton, 544 U.S. 133, 141 (2005), which cited Williams v. Taylor, 529 U.S. 362, 405 (2000) and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Few adjudications by state courts fall within § 2254(d)(1)'s "contrary to" clause.

Most state court's adjudications must be evaluated under § 2254(d)(1)'s "unreasonable application" clause. A state court decision is an "unreasonable application of federal law" if the state court "identifies the correct governing legal principle," Williams, 429 U.S. at 413, but "'unreasonably applies that principle to the facts of the prisoner's case.'" Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (quoting Williams, 529 U.S. at 413). The Supreme Court advised:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See [Lockyer v. Andrade, 538 U.S. 63, 75 (2003)].
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). **It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther…. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Harrington, 562 U.S. at 102-03 (parallel citations omitted) (emphasis added).

Finally, the test for § 2254(d)(2)'s "unreasonable determination of facts" clause:

> is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231

8

(3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, — U.S. — [ ], 131 S. Ct. 1388, 1401-03 (2011).

Rountree, 640 F.3d at 537-38 (parallel citations omitted).

### (c)     Discussion

"The Sixth Amendment's Confrontation Clause … may override state law and provide to the defendant cross-examination opportunities that would otherwise be contrary to statute, court rule, or other rulings."[7] 6 Wayne R. LaFave, et al., Criminal Procedure § 24.4(b) (4th ed.), WestlawNext (database updated Dec. 2015). The decision in Davis v. Alaska, 415 U.S. 308 (1974) exemplifies that proposition. In that case, the defendant was on trial for stealing a large safe from a bar in Anchorage, Alaska. Id. at 309. The key witness for the government was Richard Green, aged 17. Davis, 415 U.S. at 310. The safe had been discovered about 26 miles outside of Anchorage near his family's home. Green testified that he saw the defendant near his family's home not long after the burglary had occurred. He said that the defendant was standing near the trunk of a car holding a crowbar. The safe was discovered later that afternoon, at the location where Green testified the defendant's car had been parked. Id.

At the time he testified, Green was on probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing two cabins. Prior to the defendant's trial, the prosecutor moved

---

[7]     In his brief, the Petitioner also contends that his due process and equal protection rights were violated. In litigating Claim 1 in state court, he relied solely upon the Confrontation Clause. Therefore, any due process or equal protection claim is procedurally defaulted.

for a protective order to prevent any reference in cross-examination to Green's juvenile record. Id. The defense opposed the protective order. In so doing:

> [defendant's] counsel made it clear that he would not introduce Green's juvenile adjudication as a general impeachment of Green's character as a truthful person but, rather, to show specifically that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. From this [defendant] would seek to show – or at least argue – that Green acted out of fear or concern of possible jeopardy to his probation. Not only might Green have made a hasty and faulty identification of [defendant] to shift suspicion away from himself as one who robbed the [bar], but Green might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation. Green's record would be revealed only as necessary to probe Green for bias and prejudice and not generally to call Green's good character into question.

Id. at 311. Relying upon state statutes that limit the admission of a juvenile court adjudication, the trial court granted the protective order. Id. at 312. During his cross-examination, Green "claimed not to have been worried about any suspicions the police might have been expected to harbor against him." Id. at 312.

After the defendant's conviction was affirmed by the state appellate court, the United States Supreme Court granted certiorari and reversed. It pointed out that one way to attack a witness' credibility is "by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Id. In finding that the trial court abused its discretion, it held "[t]he claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, cf. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218 75 L.Ed. 624 (1931), as well as of Green possible concern that he might be a suspect in the investigation." Id. at 317-18 (footnote omitted). The Supreme Court concluded that the defendant's right under the Confrontation

Clause to cross-examine Green as to his possible bias derived from his probationary status as a juvenile delinquent outweighed the state's interest in preserving the confidentiality of juvenile adjudications of delinquency. Id. at 319.

The Petitioner argues that the Superior Court's decision to deny Claim 1 was "contrary to or an unreasonable application of" Davis. (ECF No. 2, Brief at 14). Unlike in Davis, however, in which the defense made clear that it would not introduce Green's juvenile adjudication as impeachment of his character as a truthful person, the Petitioner's trial counsel stated that the defense wanted to introduce evidence of Van Tassell's pending theft charges to impeach her credibility generally. And, unlike in Davis, the Petitioner was not seeking to cross-examine a witness about prior criminal convictions due to the possibility that the witness may be guilty of the crime in question and motivated to deflect blame from him.

Another problem with the Petitioner's claim is that it is premised upon a factual error. As set forth above, at his trial the defense argued that it should be permitted to cross-examine Van Tassell about her pending charges because the crime in which she was accused of stealing $2,000 occurred "mere days" before she said the Petitioner robbed and assaulted her. (ECF No. 2, Brief at 14; Day 1 Trial Tr. at 77). Thus, in addition to seeking to attack her credibility generally, the defense also wanted to establish that Van Tassell was so desperate for money at the end of September 2010 and early October 2010 that she fabricated the charges against the Petitioner **and** extorted $2,000 from a client of a massage parlor where she used to work. However, the pending charge of theft against Van Tassell was for events that occurred in **September 2009**, more than a year before the events at issue in the

Petitioner's case. Therefore, the alleged nexus between the charges against the Petitioner and the events for which Van Tassell was participating in ARD are considerably weaker than the defense contended.

Also significant is that when the trial court made the determination to disallow questioning regarding Van Tassell's ARD participation on the first day of trial, it left open the door to the introduction of that evidence later in the trial if the Petitioner could establish its relevance. When the trial judge made the ruling at issue, he stated: "I have no idea what the defense is in this case, so, you know, **at this point** I'm not going to allow it in." (Day 1 Trial Tr. at 78 (emphasis added). (See id. at 77-78 ("I think it's irrelevant whether or not she would have been involved in some other activity, unless you can show … some nexus between that activity and this defendant or these particular events. So I'm not going to allow it **at this time**.") (emphasis added)). On the second day of trial, Daniel Blue testified about the conversation he contended he had with Van Tassell following the Petitioner's arrest. (Day 2 Trial Tr. at 71-72). The Petitioner could have requested permission to recall Van Tassel for further cross-examination and make the argument that her pending charges were now relevant. He did not do so.

Finally, in support of his argument that his rights under the Confrontation Clause were violated, the Petitioner contends that the application of the Krall rule invites "the prosecutors interested in shielding informants, witnesses and complainants from impeachment on cross-examination[ ] to utilize the ARD[.]" (ECF No. 2, Brief at 16). In his brief to the Superior Court, however, the Petitioner acknowledged "that he has no evidence – none – of an effort to shield Ms. Van Tassell from cross-examination by granting her ARD under these circumstances. There is no evidence in the record of trial to that effect, either." (ECF No. 11-1 at 47, Brief for Appellant in Commonwealth v. Bush, No. 1187 WDA 2010, at 10 n.5 (Pa.Super.Ct. Dec. 23, 2011)).

Based upon the foregoing, the Court cannot conclude that the Superior Court's decision to deny Claim 1 was "contrary to, or an unreasonable application of" <u>Davis</u>, or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Because the Petitioner has not overcome AEDPA's standard of review, Claim 1 must be denied.

Moreover, assuming for the sake of argument that the trial court's decision violated the Petitioner's rights under the Confrontation Clause, this Court can grant him relief only if the error was not harmless. The applicable harmless error evaluation is that which is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), which requires that in order to grant habeas relief a federal habeas court must find that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). <u>Fry v. Pliler</u>, 551 U.S. 112 (2007). <u>Brecht</u> requires that relief is proper only if the court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995) (quoting <u>Brecht</u>, 507 U.S. at 627). The Court does not have "grave doubt about whether" the trial court's decision to deny the defense's request to cross-examine Van Tassell on the matter at issue "had 'substantial and injurious effect or influence'" on the jury's verdict. <u>O'Neal</u>, 513 U.S. at 436 (quoting <u>Brecht</u>, 507 U.S. at 627). For reason's already discussed, the alleged nexus between the charges against the Petitioner and the events for which Van Tassell was participating in ARD are considerably weaker than he contended. Accordingly, the alleged trial court error in Claim 1 was harmless under <u>Brecht</u>.

### (2)    Claim 2

The Fourteenth Amendment guarantees a criminal defendant the right to effective assistance of counsel on direct appeal. [8] In Claim 2, the Petitioner contends that his direct appeal counsel was ineffective because counsel failed to preserve for appellate review the claim that the trial court abused its discretion in permitting Detective Sergeant Jon Peters to testify at trial about statements the Petitioner made at the preliminary hearing. Under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a petitioner has the burden of proving that his counsel's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth [or Fourteenth] Amendment." <u>Id.</u> at 687. The Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" <u>Burt v. Titlow</u>, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting <u>Strickland</u>, 466 U.S. at 690). <u>See also</u> <u>Harrington</u>, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting <u>Strickland</u>, 466 U.S. at 689). <u>Strickland</u> also requires that the petitioner demonstrate that he was prejudiced by his counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial or direct appeal "would have been different." <u>Strickland</u>, 466 U.S. at 694. <u>See also</u> <u>Brown v. Wenerowicz</u>, 663 F.3d 619, 630 (3d Cir. 2011) ("it is not enough to

---

[8]       The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" <u>Evitts v. Lucey</u>, 469 U.S. 387, 392 (1985) (quoting <u>Griffin v. Illinois</u>, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, <u>id.</u> at 396.

show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial. The likelihood of a different result must be substantial, not just conceivable.") (internal quotations and citations omitted).

**(a)     Background**

Before Detective Peters testified at the Petitioner's trial, the following discussion occurred at side-bar:

> [Defense counsel]: Your Honor, I have just been given a copy – I was shown – given a chance to look at it yesterday, but I wasn't given a copy, a police report that sums up my client's testimony at the preliminary hearing. I don't know. Are you planning on trying to introduce it?

> [Prosecutor]: Your Honor, Detective Peters would testify he was present at the preliminary hearing. The defendant testified under oath. He took notes as to exactly what the defendant said and compiled a report. I actually just received it yesterday. I wasn't aware of it –

> The Court: Is this testimony inconsistent with the [Petitioner's videotaped statement to the police]?

> [Prosecutor]: Correct.

> [Defense Counsel]: Your Honor – … Going to object to this, first of all, because there was no reporter present at the preliminary hearing so [sic] there is no transcript. That would be the best evidence.

> Second, if I had had this in advance, since I wasn't the attorney at the preliminary hearing, I could have gotten in touch with his attorney and found out what his recollection was. The officer's recollection of what [the Petitioner] said is, I submit, not sufficiently reliable to establish what was actually said at the preliminary hearing. Doesn't reflect the questions that were asked and what was done.

> The Court: I am going to deny the objection. It really is [an issue of] weight rather than admissibility. It's really no different than in the old days when a police officer would take a statement from defendant or it was not in writing, wasn't reduced to an audio or video representation, and the officer testified as to the account. So I think at the minimum it

potentially could come in as – well, I think it comes in. So your position is noted, but I am going to allow it in.

(Day 2 Trial Tr. at 4-5).

Detective Peters then testified that on October 7, 2010, he obtained a videotaped statement from the Petitioner.[9] (Id. at 12-13). On November 4, 2010, he was present at the Petitioner's preliminary hearing. (Id. at 14). Peters testified that he made notes during the preliminary hearing and then immediately went back to the police station and compiled a report. (Id. at 15). According to Peters, the Petitioner testified at the preliminary hearing to the following: (1) he gave the victim a counterfeit $100.00 bill to watch her touch herself; (2) he never touched the victim or had any sexual contact with her; (3) the victim did not perform oral sex and never mentioned that the babysitter performed oral sex on him as well; (4) he left the victim's residence at approximately 5:00 a.m.; and (5) the victim was menstruating. (Id. at 16-17). Some of these statements were different from those made by the Petitioner in his videotaped statement to the police.

After the Petitioner was sentenced, his trial counsel filed the Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). (ECF No. 12 at 63). In it, the Petitioner claimed that the trial court erred in permitting Detective Peters to testify about his preliminary hearing testimony. In its Rule 1925(a) Opinion, the trial court explained that the claim had no merit:

> [The Petitioner's] preliminary hearing statements were admissions that were offered against [the Petitioner] at time of trial and were admissible. Pa.R.E. 803(25). The fact that [his] admissions were not reduced to writing did not preclude their admissibility or relevancy. See, Commonwealth v. Ogrod, 576 Pa. 412, 839 A.2d 294, 327 (2003), quoting Commonwealth v. Tervalon, 463 Pa. 581, 345 A.2d 671, 676 (1975)

---

[9]   The videotaped statement was introduced at trial as a Commonwealth exhibit and it was played for the jury. (Day 2 Trial Tr. at 11).

("[V]oluntary extrajudicial statements made by a defendant may be used against a defendant even though they contain no admission of guilt…"); Commonwealth v. Simmons, 541 Pa. 211, 662 A.2d 621, 635 (Pa. 1995) (same).

(ECF No. 11-1 at 69, Commonwealth v. Bush, No. 2820 of 2010, slip op. at 7-8 (C.P. Erie, Sept. 9, 2011)).

New counsel was appointed to represent the Petitioner before the Superior Court in the direct appeal. In the appellate brief, counsel waived the claim pertaining to Detective Peters' testimony, explaining that in his professional opinion it was frivolous. Counsel noted that he "has diligently and conscientiously searched the record and Pennsylvania law, and there is no support for [the Petitioner's] argument that his preliminary hearing testimony should not have been admitted because it had not been recorded." (ECF No. 11-1 at 68, Brief for Appellant, Commonwealth v. Bush, 1187 WDA 2010, at 19 (Pa.Super.Ct. Dec. 23, 2011)).

On April 29, 2019, the Petitioner filed a *pro se* petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* Therein, he contended, as he does in Claim 2, that his direct appeal counsel was ineffective for failing to litigate the claim pertaining to Detective Peters' testimony. (ECF No. 13 at 27-28, Memorandum of Law in Support of Pro Se PCRA Petition at 8-9). The PCRA court appointed William J. Hathaway, Esq., to represent the Petitioner and he filed an amended PCRA petition. (ECF No. 13 at 39, Supplement to Motion for PCRA). He did not advance the claim before the PCRA court and, therefore, it was not litigated.[10]

---

[10]     Attorney Hathaway was charged with exercising his professional judgment in deciding whether the Petitioner had any colorable claim for PCRA relief and he also had an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims. See, e.g., Commonwealth v. Chmiel, 30 A.3d 1111, 1190-91 (Pa. 2011). In its opinion denying relief, the PCRA court noted that it received a letter from the Petitioner "requesting that I address those issues his counsel found meritless." It held that "[b]ecause Petitioner is represented by counsel, he is not entitled to hybrid
*Footnote continued on next page*

17

**(b)    Claim 2 Is Procedurally Defaulted and, In the Alternative,
Fails On the Merits**

In the answer, the Respondents contend, *inter alia*, that the Petitioner procedurally defaulted

Claim 2. They are correct. The "exhaustion doctrine" requires that a petitioner challenging his state

custody in a federal habeas action must raise his federal constitutional claims in state court through the

proper procedures before he litigates them in a federal court. See, e.g., Lambert v. Blackwell, 134 F.3d

506, 513 (3d Cir. 1997) ("[i]t is axiomatic that a federal habeas court may not grant a petition for a writ

of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts.")

(citing 28 U.S.C. § 2254(b)(1)(A)). This "exhaustion" requirement is "grounded in principles of comity;

in a federal system, the States should have the first opportunity to address and correct alleged violations

of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). See also O'Sullivan

v. Boerckel, 526 U.S. 838, 842-49 (1999).

Importantly, in order to exhaust a claim, "state prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking **one complete round of the State's**

**established appellate review process**." O'Sullivan, 526 U.S. at 845 (emphasis added). In Pennsylvania,

this requirement means that a petitioner in a non-capital case that is seeking to litigate a claim of direct

appeal counsel's ineffective assistance must have raised that claim to the Superior Court of Pennsylvania

in his PCRA appeal (since a PCRA proceeding is the first occasion to rise a claim of ineffective

---

representation and, therefore, this Court will address only those claims raised by counsel." (ECF No. 13 at 46,
Commonwealth v. Bush, No. 2820 of 2010, slip op. at 3 n.3 (C.P. Erie, July 9, 2013)). The Petitioner did not seek leave to
proceed *pro se*, and Attorney Hathaway continued to represent him in his subsequent appeal to the Superior Court.

assistance of direct appeal counsel). <u>See</u>, <u>e.g.</u>, <u>Lambert v. Blackwell</u>, 387 F.3d 210, 233-34 (3d Cir. 2004) (describing the PCRA appellate review process).[11]

The Petitioner did not exhaust Claim 2 during his PCRA proceeding because Attorney Hathaway did not pursue it. As a result, Claim 2 is procedurally defaulted. <u>See</u>, <u>e.g.</u>, <u>Lines v. Larkin</u>, 208 F.3d 153, 160 (3d Cir. 2000); <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000). <u>See also</u> <u>Rolan v. Coleman</u>, 680 F.3d 311, 317 (3d Cir. 2012) ("Procedural default occurs when a claim has not been fairly presented to the state courts (*i.e.*, is unexhausted) and there are not additional state remedies available to pursue[.]"). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism," <u>Coleman</u>, 501 U.S. at 730, and it provides that a federal habeas claim may not be addressed by the federal habeas court if the petitioner either: (a) failed to present it to the state court and the state court would now decline to address it on the merits because state procedural rules bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court and, for that reason, the state court declined to address the federal claim on the merits. <u>See</u>, <u>e.g.</u>, <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

---

[11] The exhaustion doctrine became all the more important after the enactment of AEDPA, which, as set forth above, put into place highly deferential standards of review that a federal court must apply to a state court's adjudication of a petitioner's federal constitutional claims and to its findings of fact. 28 U.S.C. § 2254(d) & (e)(1). If the petitioner failed to provide the state court with the opportunity to review his claim on the merits, he is not entitled to *de novo* review in his federal habeas proceeding. Rather, for the reasons set forth below, the claim is unreviewable in federal court (unless he can overcome his default) and, when there is no longer any available mechanism for the petitioner to exhaust the claim in state court, it is procedurally defaulted.

A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 494 (1986).[12]

In an attempt to establish "cause" to excuse his default, the Petitioner points to what he claims was Attorney Hathaway's ineffective assistance during the PCRA proceeding. It has long been the case that attorney error that rises to the level of ineffective assistance of counsel in violation of a petitioner's **federal constitutional** rights can constitute "cause" for relief from procedural default, <u>Coleman</u>, 501 U.S. at 753-54, but the Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding. <u>See</u>, <u>e.g.</u>, <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987). Therefore, he cannot rely on Attorney Hathaway's failure to litigate Claim 2 to overcome the default of that claim.

It is true that, in accordance with <u>Martinez v. Ryan</u>, — U.S. — , 132 S.Ct. 1309 (2012), a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim" of **trial counsel's ineffectiveness** if, during the litigation before the PCRA court, the petitioner's

---

[12]    A petitioner also may overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" <u>Schlup v. Delo</u>, 513 U.S. 298, 316 (1995). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Schlup</u>, 513 U.S. at 316. This is not the type of extraordinary case in which a petitioner can overcome the default of his claims by way of the miscarriage of justice exception.

PCRA counsel was ineffective.[13] The Petitioner relies upon Martinez to establish "cause" for his default, but it does not assist him. That is because Claim 2 is a claim that **direct appeal** counsel was ineffective, and Martinez's limited holding only applies to assist a habeas petitioner overcome the default of a claim that **trial counsel** was ineffective. Martinez, 132 S.Ct. at 1319 ("Coleman held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings [such as the PCRA] for claims of ineffective assistance of counsel at trial.").[14] See also BRIAN R. MEANS, Federal Habeas Manual § 9B:62, WestlawNext (database updated May 2016) ("To date, the vast majority of circuit courts that have considered the issue have declined to extend Martinez to claims involving the ineffective assistance of **appellate** counsel.") (emphasis in original, citing Reed v. Stephens, 739 F.3d 753, 778 n.16 (5th Cir. 2014); Hodges v. Colson, 727 F.3d 517, 531 (6th Cir. 2013); Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012); Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012)). But see Ha Van Nguyen v. Curry, 736 F.3d 1287, 1296 (9th Cir. 2013). Thus, the Petitioner's reliance upon Martinez to overcome the default of Claim 2 is misplaced.

Based upon all of the foregoing, Claim 2 is procedurally defaulted. If the Court could consider it on the merits, it would be denied. In its Rule 1925(a) Opinion, the trial court explained that the portion of Detective Peter's testimony at issue in Claim 2 was admissible under the Pennsylvania Rules of

---

[13] The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21.

[14] The Supreme Court called collateral proceedings that provide the **first occasion to raise claims of ineffective assistance of trial counsel** "initial-review collateral proceedings," and it limited the rule announced in Martinez to initial-review collateral proceedings. 132 S.Ct. at 1315-21.

Evidence.[15] This Court is bound by that state-law determination. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir.2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle, 502 U.S at 67-68). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir.2010). Accordingly, the Petitioner cannot demonstrate that direct appeal counsel acted objectively unreasonably for not presenting a meritless claim to the Superior Court on direct appeal, or that he was prejudiced by his counsel's handling of the matter.

### (3)    Claim 3

In Claim 3, the Petitioner contends that his trial counsel was ineffective by not moving for a mistrial when the Commonwealth introduced a police inventory sheet.

#### (a)    Background

The Petitioner raised Claim 3 in the PCRA proceeding. The PCRA court held that it had no merit. It explained:

> As to the introduction of the property inventory sheet, [the Petitioner] has failed to demonstrate that he is entitled to relief. See March 23, 2011 trial transcript at 39 *et seq.*

> As those portions of the transcript reflect, during the cross examination of the Petitioner, he was asked whether three cell phones were confiscated from him. He indicated that he could not remember. Id. at 39. Commonwealth's counsel then confronted him with a police inventory sheet which indicated that he possessed three phones at the time of the inventory. Id. at 39-40 (This evidence was introduced by the Commonwealth to rebut the Petitioner's testimony that he used the victim's babysitter's cell phone to call the victim the afternoon of the incident. Id. at 33-35. Assuming the Petitioner possessed three cell phones and a charger, there would not have been any reason to use the sitter's phone. It was not introduced to demonstrate the Petitioner's prior arrest.) On redirect examination, Petitioner's trial counsel established that the inventory

---

15    The Petitioner did not contend that the admission of Detective Peter's testimony violated his federal constitutional rights.

sheet was dated September 3, 2010, a month before the trial incident. Id. at 66. Although there was an inference from this evidence that the Petitioner was arrested or was in police custody about one month prior to the incident, no specific information about the arrest was elicited. After discussion with counsel, this Court gave the jury a cautionary instruction that the inventory sheet did not relate to this particular incident and that the jury should not draw any negative inference against the Petitioner in this case because of the booking information. Id. at 67.

Not all references to prior criminal activity require a mistrial. See, Commonwealth v. Fletcher, 41 A.3d 892 (Pa.Super. 2012), allocator denied, 57 A.3d 67 (Pa. 2012); Commonwealth v. Maxwell, 478 A.2d 854, 856-858 (Pa.Super. 1984). A mistrial is warranted when the evidence has the unavoidable effect of depriving the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Furthermore, where cautionary instructions are adequate to overcome any possible prejudice, a grant of a mistrial is not required. Commonwealth v. Fletcher, 41 A.3d at 895.

In the case at bar, the jury heard very little evidence concerning the inventory sheet from which it could infer prior criminal activity. The trial references noted only the property confiscated without any further elaboration concerning the nature of the arrest or crimes charged. This reference was, at worst, innocuous. Moreover, the Court's curative instruction was more than adequate to avoid the possibility that the jury would draw an improper adverse inference from the introduction of that evidence. Therefore, Petitioner has failed to show that his trial counsel was ineffective. In addition, the Petitioner cannot demonstrate prejudice, i.e., that the outcome would have been different had counsel requested a mistrial.

(ECF No. 13 at 44, Commonwealth v. Bush, No. 2820 of 2010, slip op. at 7-8 (C.P. Erie, July 9, 2013)).

In the Petitioner's subsequent appeal, the Superior Court held that the Petitioner waived Claim 3 because it was not sufficiently briefed. (ECF No. 13 at 69, Commonwealth v. Bush, No. 1387 WDA 2013, slip op. at 3-4 (Pa.Super.Ct. Mar. 27, 2014) ("Bush II") (citing Pa.R.A.P. 2119(a); Commonwealth v. Nelson, 567 A.2d 673, 676 (Pa.Super.Ct. 1989); Commonwealth v. Rodgers, 605 A.2d 1228, 1239 (Pa.Super.Ct. 1992)). It further held that if the claim were not waived, it would be denied on the merits for the reasons set forth by the PCRA court. (Id. at 4 n.5).

### (b) Claim 3 Is Procedurally Defaulted and, In the Alternative, Fails On the Merits

Because the Superior Court determined that the Petitioner waived Claim 3, it is procedurally defaulted. Once again, the Petitioner attempts to overcome his default by relying upon <u>Martinez</u> and faulting Attorney Hathaway for failing to adequately brief the claim to the Superior Court. This argument has no merit. That is because <u>Martinez</u> "applies only to attorney error causing procedural default during the initial-review collateral proceedings[,]" *i.e.*, during the PCRA-court phase of the litigation, "not collateral appeals." <u>Norris v. Brooks</u>, 794 F.3d 401, 405 (3d Cir. 2015) ("<u>Martinez</u> made very clear that its exception to the general rule of <u>Coleman</u> applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals."). <u>See also</u> Federal Habeas Manual § 9B:62 ("The Court's decision in <u>Martinez</u> was influenced by the realization that '[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim.' 132 S.Ct. at 1316. Because this concern is not present in 'appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts,' a petitioner may not use attorney error in one of these proceedings as cause to excuse a procedural default. 132 S.Ct. at 1320[.]").

In addition, the Superior Court's alternative adjudication on the merits withstands review under § 2254(d). <u>See</u> <u>Rolan</u>, 680 F.3d at 320 (applying AEDPA's standard of review to the Superior Court's alternative holding on the merits). The Superior Court adopted the PCRA court's reasoning that the Petitioner failed to establish both <u>Strickland</u>'s performance and prejudice components. Since the state

court applied the appropriate standard[16] when it evaluated Claim 3, its decision was not "contrary to" to Strickland. Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). Because its adjudication was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" Harrington, 562 U.S. at 102-03, the Court cannot conclude that the state court's decision was an "unreasonable application of" Strickland either. And, finally, the Petitioner has not established that the state court's decision to deny this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## C.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As codified at 28 U.S.C. § 2253, it provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S.

---

[16]       Pennsylvania courts apply the Strickland standard when evaluating ineffective assistance of counsel claims. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

## II.

For the reasons set forth above, the Petitioner's claims are denied and a certificate of appealability is denied on all claims.

An appropriate Order follows.


Dated: September 12, 2016

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge